Good morning, and may it please the Court. My name is Sarah George, and I, along with my co-counsel and friend, Bo Carter, represent Appellant Mr. Kasey Hoffmann. I'd like to reserve seven minutes for my co-counsel's rebuttal. All right, I'll try to help you out, but keep your eye on the clock as well. Yes, Your Honor. This Court should reverse the District Court's grant of summary judgment for three reasons. First, as Appellee's answering brief notes, the District Court made factual findings. This weighing of the evidence was wholly improper at the summary judgment stage. Second, there are triable issues of material fact that should have precluded summary judgment, and reversal is warranted on this ground as well. Finally, at minimum, summary judgment should be reversed because opposing counsel failed to provide any initial disclosures as required under the federal rules of civil procedure, and they stonewalled and rebuffed our clients' attempts at discovery every opportunity they had. To my first point, Appellee's note in their statement is completely erroneous. This is an implicit assertion that the District Court did make factual findings, which is improper at summary judgment. Examples of these factual findings can be seen at ER 8-9, that Lassen County uses Section 426 in issuing marriage licenses. Lassen County states that it uses the exception to the general rule, and it cites to undisputed facts, which cites to a declaration which does not say that they use Section 426. The District Court found, however, that the county did use Section 426. Second, the court found that the letter did not reflect the county's policy, but that the county uses a policy that allows inmates to get married, and we see this at ER 9. The county at no point conceded that this letter was a one-off mistake. In fact, only at the District Court's grant of summary judgment did the court say that the county's assertion that Mr. Hoffman had to be physically present was not an incomplete statement of the law, but that it was an inaccurate statement of the law. The final factual finding that the court made was that Bustamante failed to train Idarraga, so she could not be held liable. However, there is no discovery on the extent to which Bustamante trained Idarraga. However, Bustamante did admit in discovery that she does train employees. So, the extent of the training specific to Idarraga... Let me ask you a question. There's... There appears to be a distinction in the magistrate judge's decisions about someone who's incarcerated and someone who is a jail prisoner. What is that distinction, if you know? Yes, Judge Bailson, the distinction is in that the county notes that they have issued 482 marriage licenses to state prisoners. Our client was a county prisoner, and so the extent to which marriage licenses were issued to county prisoners is And do you agree that the 426 number relates to state prisoners only? Yes, Your Honor, based on the discovery provided by appellees. And so, and then there's a... As to the jail prisoners, it said that only two jail prisoners attempted to be married. Do you accept that as well? Yes, Your Honor, and those two were our client and his fiancée, Ms. Adams. And okay, and Dina Adams is a female, is that correct? Yes, Your Honor, she is. But they were both in the same jail? Yes, Your Honor. Okay, thank you. Returning to the factual findings that the district court made, I'd like to point out one more. The district court found that Lassen County follows California state law. However, when you look at the letter that was sent to Mr. Hoffman, the county noted that he must be physically present to sign a marriage license in our office. However, this is a more narrow reading of California law. California law states that they must appear before the county recorder. It does not require physical presence in the county recorder's office. All right, I have another question for you. When your client was representing himself, he did not file any objection to the magistrate's R&R, correct? Yes, Your Honor, that's correct. And it seems under the Ninth Amendment, the court has not waived any factual findings by the district court by failing to object? Your Honor, that's not always the case. The court should weigh the totality in looking at whether or not he has waived the factual findings. That rule applies to conclusions of law. But as to factual findings, is there any precedent that would allow this when the petitioner, the plaintiff, did not object to the R&R? Well, Your Honor, because we are at the summary judgment stage, the district court should not have made factual findings in weighing the evidence. That would have been improper. However, regardless of the fact that he didn't specifically object to the report and recommendations, we do have at least four different motions filed by a pro se inmate where he's alerting the court that he disagrees with the motion for summary judgment by opposing counsel, and that also he's been stonewalled at every attempt he's made to receive discovery. And so he is alerting to the court, or he is alerting the district court that he needs additional discovery, that appellees are not participating in discovery. And then after summary judgment was granted, he filed a notice of appeal, which essentially is an objection to the report and recommendations and the ultimate order of the court. You mentioned that he would like to have additional discovery and feel that he was stonewalled. Could you kind of provide for us, if you got your way and you could get that discovery, what discovery are you looking for? Yes, Your Honor. So the discovery that our client asked for can be analogized to the case in Jones in which he asked for information about his specific case, information about other inmates in similar situations, and then about policy in general. Likewise, Hoffman asked about those three groups of discovery and some specific examples. At ER 54, interrogatory number six, he asked in what bylaw, office, policy, county rule, or official law would plaintiff find the requirement defendant Julie Bustamante cited in her letter, the state law basis for denying the application. He only ever received an answer to that in defendant's motion for summary judgment. He also asked at ER 123, interrogatory number seven, please explain how plaintiff could not be issued a marriage application, but 482 marriage applications were issued to persons in custody. He also asked in his deposition question, number five at ER 58, how many persons have appeared in absentia? This would be really helpful to note that while some prisoners have received marriage licenses, have others gotten it through an alternate process? Another important question, deposition number 47 on ER 96, how many times have you denied an inmate his right to marriage in the last 10 years? So we have half of the story, how many inmates have been granted marriage licenses? But for all we know, there could have been numerous inmates who were denied applications such as Hoffman himself. Okay, I want to go back to what happened before the magistrate judge. Your client in a pleading that was docketed number 32, he made the point that the magistrate judge should not grant summary judgment because he wasn't getting any discovery. He made that point clear. But then on June 26, the magistrate judge, excuse me, May 26, entered an order granting in part your client's motion to compel. And she gave him leave to file some additional papers on the summary judgment motion in an order dated June 30. But he never filed anything. So he had the opportunity to file more, but according to the docket, he never followed through on that. So it seems to me you're in a difficult position when it comes down to ‑‑ I agree that he had been maybe stonewalled, maybe too strong, but he hadn't gotten many documents. But she did grant his motion to compel in part, but he never followed through in filing. And the discovery, the county provided the discovery. It's set forth in the order of June 30. But he never filed anything. So hasn't he really waived any right to complain about a lack of discovery? Because he got some discovery eventually, but he never put it in front of the magistrate judge. Two points to answer your question, Your Honor. First, he received zero documents throughout the entirety of this case. And many of those should have been provided in the initial disclosures. And secondly, in the answers that the court ordered defendants compelled to answer, it later noted in the grant of summary judgment that their answers were insufficient. However, they held that point moot because they eventually cited to the state law. So even the discovery that was compelled was insufficiently answered according to the district court. I'd like to reserve the remainder of my time for my co‑counsel. I wanted to save time for Mr. Carter. Thank you, Judge Wine. Good morning, Your Honors. May it please the court, my name is Patrick Deaton and I have the privilege of representing Lassen County and Julie Bustamante, who is Lassen County's elected clerk recorder. And briefly, I just wanted to acknowledge the Pepperdine Law students in this case. I do understand they are graduating tomorrow and that's an enormous feat. Congratulations. And it's also apparent that they were diligent in their efforts and their replacement briefing. But I wouldn't be here today if I agreed with their replacement briefing, frankly. So starting at the beginning with the plaintiff. Mr. Hoffman is a career criminal as set forth in the briefing. He's a litigious pro‑pro inmate who is not an incompetent inmate. He has over two dozen civil rights cases that he has filed in the district courts and he has nine appeals within this very circuit. He is by no means ignorant of the substantive law, the rules of procedure, or the rules of evidence. Mr. Hoffman specifically chose to sue and identify Lassen County and Julie Bustamante in this case as the defendants. He did not identify Michelle Ygarraga as a defendant in this case, despite the fact that he knew of her existence and knew of the fact that she wrote this letter back in May of 2015. So this case is not about Michelle Ygarraga's potential liability. The issues are very narrow. The issues are on Monell with respect to Lassen County liability and with respect to Ms. Bustamante. It's with respect to official capacity and personal capacity potential liability. Can I, let me interrupt you. Sure. Excuse me. All right. So the letter of May 7th, 2015 that was signed by, how does she pronounce her name, Ygarraga? I believe it's Ygarraga. Okay. You agree that was at least incomplete, if not misstated. Misstated what the, what the policy was. Is that correct? I believe it is incomplete. It misstated the law, correct? It fell short of explaining the full law. All right. And then when the litigation started, you recognized that and you don't disagree that the magistrate judge characterized the letter as inaccurate, correct? I believe the inaccuracy falls with incompleteness. Okay. Well, but you knew that the plaintiff wanted to get married. When you realized that the letter was a mistake, what I don't understand, why didn't you just consent to his being married to this woman? That actually wouldn't... I mean, wouldn't that moot out the whole, basically the whole case? It potentially could have. I don't know. Mr. Hoffman, as I said, is a litigious defendant. He is not the same as the defendant in the Tom's case, which is cited in the... You're saying you wouldn't let him get married because he was too litigious? Absolutely not, Your Honor. It was because Mr. Hoffman didn't pursue any further efforts to get married. At that point in time... Well, did you offer him, say, look, the letter was inaccurate or the clerk should have explained that there's an exception in law for people who are incarcerated to get permission to sign the papers so you can get married in jail? I'm not aware of any such facts, Your Honor. Okay. Thank you. So... With regard to the attempts to seek discovery, he did propound discovery, and the responses are non-responsive. I think counsel, Ms. George, characterized that as stonewalling. So responses along the lines of, well, we're trained to follow the law, look in the code book. That's not responsive. Why shouldn't we construe his attempts to basically object to the failure to comply with the discovery request in his opposition to motion for summary judgment as a Rule 56D request and send it back for additional discovery? Sure. And several reasons, which has already been alluded to in argument before, is that Mr. Hoffman had the opportunity to raise those issues specifically in the opposition to the summary judgment. Did not. Had the opportunity to again raise that issue in the objections. Did not. And more importantly, within the motion to compel order itself, he was giving those opportunities to again object that if he was given insufficient responses, that he had the right and opportunity. He was invited to do it by the court. He chose not to. And with respect to Rule 56D, Rule 56D was intended to give an inmate or, excuse me, a litigant an opportunity to dive into new areas that haven't been explored. Additional information. Not to reconsider issues that have already been considered on one hand. And then at the Rule 56 motion to say, hey judge, you know, I want reconsideration of these issues you've already given diligent attention to. Your position in the district court for the magistrate judge, this letter was a one incident issue. And I think we all understand there's a lot of law about that. But really, didn't the letter really state a policy that it's not just one instance. The clerk basically shut him down and said, you know, you're in jail, you can't get a marriage license. And that pretended, well, it stated a policy. It also happened that it was inaccurate. But as far as the plaintiff knew, wasn't, doesn't this satisfy Monell in the sense of stating a policy of the, of the county? No, I don't believe so, your honor. And first, look at the letter. The letter does not say an inmate does not have a right to marry. It does not say that because you're an inmate, we're not going to help you out. It does not foreclose any other alternative. As we started off this discussion, it was an incomplete statement. That's it. And so whether or not this is a policy. The first paragraph of the letter says, please find the enclosed claim form. You will need to call police. Your claim, what, what claim forms is referred to? Do you know? That goes back to Mr. Hoffman's litigious behavior. He files a claim on everything he perceives to be a injustice. Why couldn't the clerk have also said, as far as your marriage application, I will, I'm enclosing the procedure for someone who's incarcerated to get married. I can't speculate as to why that was not in there, your honor. Was this woman ever deposed? She was not deposed. She was not deposed by anybody. And you didn't submit a declaration from her either, just the, the name defendant. She was, she did submit a declaration in support of the motion for summary judgment. Okay. So there's, there's nothing in the record as to why the deputy clerk sent, phrased the letter the way this is. The, I would say that that's accurate. I would say that's accurate, your honor. But we know what we know from the law is that final policy decision makers make policy, not subordinates. Ms. Yadiraga is a deputy clerk. So if she can't make policy in the first instance, she can't make up her own policy within this letter that she doesn't have the authority to make. And we know that the stated policy in Lassen County is that inmates have the right to get married. 482 inmates during the 10 year, 10 years of tenure of Ms. DeMonte as the county clerk recorder got married. So we have one aberration, which is that single instance of conduct, misconduct that's alleged to be unconstitutional. I'm not a mathematician, but if we look at the numbers, we have 1800 marriage applications that were processed in those 1800. We have that one aberration. That's, that's about a 0.005% aberration. That's five, what is that? 0.005% of 1% that something went wrong. If we look at just the, the inmates themselves out of 482, we have one aberration, which is 0.2%, two tenths of 1% that allegedly something went wrong on one occasion. Under Monell, a single occasion of unconstitutional conduct does not arise to a policy and that can't be formulated that way. Otherwise we really strip the rule that responding at superior does not apply. And the case law is very clear that responding at superior liability in Monell type cases doesn't apply for this very reason that if an employee happens to get it wrong, if they happen to get it wrong on one time, that the municipal entity, the public entity should not be held responsible for it. The, the issues of the county liability is Monell. The issues of liability with respect to Ms. Bustamante is very closely related to Monell. In her official capacity, she's simply a redundant defendant. And in that matter of regard alone, she should be dismissed. There's no, there's no opposition to that whatsoever. With respect to her individual liability, she must have had some personal involvement with the interaction. There has to be a causal connection of some sort. She didn't have that direct involvement with Mr. Hoffman. So therefore we go back onto the training and the training standards are very akin to the Monell standards as you have to have some sort of pattern of misconduct. There has to be some obvious reason that additional training is necessary. And again, we go back to those numbers. We have one aberration out of those many that don't even equal a percent. There's no obvious need for training in any other regard. There's no obvious pattern of misconduct. So there's nothing to show that Ms. Bustamante in her individual capacity should be held liable as well. Same token. If the municipal liability is held responsible for one misact and the same misconduct, it's like strict liability and that's not what the law holds. I do want to jump to the discovery issues that is brought up in the initial argument. The initial disclosure requirement is barred for two reasons. One, the first time that that argument was even brought was on a reply brief. Wasn't brought forth in the objections. Wasn't brought forth in the initial opening brief. It was only brought up in the reply brief for the first time. But more importantly than that, initial disclosures actually don't even apply to a prisoner case who is representing themselves under federal rule of civil procedure, excuse me, 26A, I want to make sure I cite it correctly. Federal rule of civil procedure A1B4 specifically exempts initial disclosures from in custody pro per situations. The other issue I think is glaring in this case, which your honor brought up before are the multiple opportunities that Mr. Hoffman had to bring his discovery issues before the court. Like I said, rule 56 is not designed to be a reconsideration motion. It's not designed for that. But even if he thought he needed additional discovery, he could have specifically said so in his opposition. He did not. The briefs acknowledge that he did not. The briefs simply say, well there was some implied request. There was a constructive request. The judge should have basically known better. Well that places district court judges in a guessing game, which I don't think that that is appropriate. But moreover, to eliminate the guessing game he could have and very well could have in his objections, specifically stated, hold on a second judge, I need more time. I need to figure out these issues. And the objections process is important. It serves a legitimate fundamental basic purpose. It allows the district court judge, it allows the parties to ferret out the issues, to figure them out at the district court level and fully litigate those issues. It's not an opportunity to hold back. It's not an opportunity to sandbag somebody who is successful on a summary judgment motion and hold those arguments for appeal. That's not the proper purpose for the objection procedure. With that, your honor, I will submit. Thank you very much. Thank you. Okay. Thank you, your honors. I just have a few quick points on rebuttal and I'm happy to answer any of your questions. Uh, yes. Oh, the first being that, um, even to this point, counsel on the other side still does not concede that this is an incorrect statement of the law, but the district court did state that this is not just incomplete. It's wrong. And as you'll see throughout the course of litigation, they've been unable to concede that this is incorrect. Now we don't know as far as the state prisoners versus local jail inmates, or excuse me, county jail inmates, whether more were denied or whether, um, whether more had requested but were denied because the only state that two had requested and two were turned down, those two were Hoffman and Adams. We don't know how the state prisoners even got theirs because they state in their exceptions or excuse me, they state that it's the exception to the general rule. But then when we look to the actual Bustamante declaration, she does not state that. Now as to the specific discovery point, um, whether there's additional information available, um, Hoffman throughout litigation has sought just information about the policy, about how these are implemented and how they were trained. But it all turns, he was turned down. Um, as your Honor, Judge Winn noted, completely non-responsive. He was unable to find out anything about the policy. If you zoom out a little bit, you start at the May 7th letter. It wasn't for almost two more years that he found out that, um, that the policy was based on the California Family Code, section 350, 359 and 426. That was after he had, or he had, that was after he had served all of his discovery requests, after he had filed his own motion to compel and his own motion for summary judgment. Now he says in some of his papers that he's lost his fiance and her, her child. Does that, is that right? That is, that mean he doesn't any longer want to marry her or what did he mean when he said those things in some of his, in some of his filings? So some of his, um, it's indicated in a letter and in our record at 405 to 407, that they intend to get married at some point in the future. So long as, um, you know, other things work out. And now that would only be an issue as for the injunctive relief, but still the damages, um, that Hoffman incurred would still be, um, relevant even if they weren't, um, going to get married in the future. So he still wants to marry this woman? Pardon? He still wants to marry this woman? Yes, Your Honor. Is she willing to marry him or is that, is that in the record anywhere? There's the letter at 405 through 407 where, um, she states that they will want to get married in the future. But again, um, we don't have as much information about where she is or, um, what the status of their relationship is other than that letter. She's no longer in prison? We don't know that. You don't know? I don't know. Um, I thought from the record that they decided to put their, uh, marriage plans on hold. Actually, yes, Your Honor. So that, um, whenever either he's able to get married or whenever they, he was able to get out. Um, but, um, throughout this litigation, it's, it's made clear that he wants to continue to marry her. Um, but that even only applies as to the injunctive relief sign. But as for there being no evidence of the policy, uh, we do see finally at the record at 470 and 471 that there is a policy in place for state prisoners, supposedly that they were able to receive marriage licenses. What we do have also is that no inmates in County jail were given the opportunity to get married. Evidence of the official policies, the letter. Yes, Your Honor. And the May 7th letter states other than the letter, pardon? Anything in addition to the letter from what we have in the record, the only evidence of a policy is the May 7th letter. And we only have evidence of County jail inmates, um, even requesting to get married more than, uh, just these two Hoffman and Adams. And so the County talks about the fact that they've issued 482 licenses to state prisoners, but the fact that there's zero in the County jail seems like there may be an issue. This is something that could be discussed, um, at trial on the beyond a summary judgment motion, but even if further discovery required looking into the policies that he's asked for dealing with County jail inmates, dealing with marriage licenses, either with one person incarcerated or both parties incarcerated. This is information he asked for and never received and is relevant to, um, the claims he is bringing. If there are no further questions, thank you so much. Thank you very much to both sides of your argument. Thank you to Pepperdine and to both of you. Congratulations again. And Mr. Rosen, thank you as always for participating. The matter is submitted.
judges: Nguyen, Owens, Baylson